IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SHAWNEE R. ENGLISH,

        Plaintiff,

vs.                             No. CIV 04-1196 LCS

JOANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** came before the Court on Plaintiff's Motion to Reverse and Remand

Agency Decision [Docket #11], filed March 15, 2005.  The Commissioner of Social Security

issued a final decision denying Plaintiff's application for disability insurance benefits and

supplemental security income.  This matter comes before this Court pursuant to 28 U.S.C. §

636(c).  The United States Magistrate Judge, having considered the Motion, briefs, administrative

record, and applicable law, finds that this Motion is not well-taken and should be **DENIED**.

I.        STANDARD OF REVIEW

The standard of review in a Social Security appeal is whether the Commissioner's final

decision is supported by substantial evidence and whether she applied the correct legal standards.

*Hamilton v. Sec'y of Health and Human Svcs*., 961 F.2d 1495, 1497-98 (10th Cir. 1992).

Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied

by such relevant evidence as a reasonable mind might accept to support the conclusion.  *Gossett*

*v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).  The decision of an Administrative Law Judge

("ALJ") is not supported by substantial evidence if the evidence supporting the decision is

overwhelmed by other evidence on the record.  *Id.* at 805.

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of at least twelve months which prevents the claimant from engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)).  The Secretary has established a five-step process for evaluating a disability claim.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1, or he is unable to perform work he had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  *See Rayes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988).  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience.  *See Gibson v. Bowen*, 838 F.2d 442, 448 (10th Cir. 1988).

## II.     PROCEDURAL HISTORY

Plaintiff, now 40 years old, filed her applications for disability insurance benefits and supplemental security income on September 24, 2001, alleging disability commencing on August 10, 2001.  (R. at 50-52, 268B-D).  Plaintiff's alleged disability was due to panic disorder and obsessive compulsive disorder.  (R. at 65).  Plaintiff has a high school education (R. at 71) and past relevant work as a cashier.  (R. at 66).

Plaintiff's applications for disability insurance benefits and supplemental security income were denied at the initial level on April 10, 2002 (R. at 28-32, 268F-J) and at the reconsideration level on May 22, 2002.  (R. at 35-38, 268L-O).  Plaintiff appealed the denial of her application by filing a Request for Hearing by Administrative Law Judge.  (R. at 41-42).  Attorneys Gary Martone and Michelle Baca were retained by Plaintiff on August 1, 2002.  (R. at 25).

The ALJ issued his decision on December 12, 2003 (R. at 11-20), analyzing Plaintiff's claim in accordance with the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability in 2001.  (R. at 15).  At the second step, the ALJ found that Plaintiff had an impairment or combination of impairments considered 'severe' based on the requirements of 20 C.F.R. § 404.1520(b).  (R. at 16).  The ALJ further found that Plaintiff's medically determinable impairments did not meet or equal any of the impairments found in the Listing of Impairments ("Listings"), Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599. (Id.)  Additionally, the ALJ found that Plaintiff was not fully credible regarding the extent of her limitations.  (R. at 17).  At step four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform work at all exertional levels, provided the work was of a moderate stress level and did not involve a great deal of interaction with the public or with numerous co-workers.  (Id.)  Based on these criteria, it was determined that Plaintiff would be unable to return to her past relevant work.  (R. at 18).  At step five, the ALJ found that Plaintiff was capable of adjusting to work existing in significant numbers in the national economy.  (R. at 19).  Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time during the period under review.  (R. at 20).

Plaintiff subsequently filed a Request for Review of Hearing Decision by the Appeals Council.  (R. at 10).  The Appeals Council received additional evidence in the form of a brief by Plaintiff's attorney, but denied the request for review on September 10, 2004.  (R. at 6-8). Hence, the decision of the ALJ became the final decision of the Commissioner for purposes of judicial review.  On October 19, 2004, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## III.    FINDINGS

The earliest medical records in this case date from June, 1997 when Ms. English was evaluated by Dr. Abraham Fiszbein.  (R. at 118-157).  Dr. Fiszbein noted social phobia and panic attacks and diagnosed Plaintiff with Generalized Anxiety Disorder and Depressive Disorder NOS.[1]  (R. at 156).  Plaintiff was placed on Serzone and as of July, 1997 reported no side effects. (R. at 142).  By the end of 1997, Ms. English began reporting more anxiety symptoms and compulsive behavior.  (R. at 137).  In January, 1998, Dr. Fiszbein recommended Plaintiff begin taking Anafranil.  (R. at 136).

In February, 1998 Plaintiff reported increased anxiety and obsessive rituals.  (R. at 131). Dr. Fiszbein prescribed Xanax and indicated he had given Plaintiff a letter so she could stop going to work.  (Id.)  It was noted that Effexor had been prescribed for Ms. English but that she had discontinued the medication due to unpleasant side effects.  (Id.)

By July, 1998, Plaintiff was reporting increased anxiety.  (R. at 119).  Plaintiff had

---

[1]The abbreviation 'NOS' stands for 'not otherwise specified.'  This diagnosis is made when the individual's symptoms do not meet all the criteria for a specific diagnosis, but still qualify for inclusion within a certain class of mental disorder.  *Diagnostic and Statistical Manual of Mental Disorders*, (4th ed. 2000), [DSM-IV].

apparently quit or been fired from her job around this time and it was noted that she did not want to look for another job.  (Id.)  Energy and motivation were noted to be low.  Dr. Fiszbein stated that Plaintiff's lack of energy was not a potential side effect of her medications.  (Id.)

Ms. English underwent a mental residual functional capacity assessment in 1998 performed by Carol Burks, Ph.D.  (R. at 232-238).  Dr. Burks found Plaintiff to have moderate functional limitations in most categories dealing with understanding and memory, sustained concentration and social interaction.  (R. at 232-233).  Ms. English was felt to be markedly limited in her ability to carry out detailed instructions, to maintain concentration, to perform activities on schedule and to sustain a routine without special supervision.  (Id.)  Dr. Burks believed Plaintiff to be markedly limited in her ability to adapt to changes in the workplace as well.  (Id.)  Dr. Burks diagnosed Ms. English with obsessive-compulsive disorder with poor insight, panic disorder without agoraphobia, and personality disorder NOS.  Plaintiff was given a GAF score of 46.[2]  (R. at 238).

Ms. English provided the ALJ with several laboratory and radiological reports dating from early 1996 to late 1998.  The majority of these lab reports have not been evaluated by a physician, so their relevance is largely uncertain.  (R. at 158-168).  Overall however, the results of the blood tests appear to be within normal limits.  (Id.)  Ms. English also underwent an abdominal ultrasound due to abdominal pain (R. at 162) and X-rays of the lumbo-sacral spine (R. at 163), both of which were normal.

---

[2]GAF, or Global Assessment of Functioning is used for reporting a clinician's judgement about an individual's overall level of functioning.  A GAF of 48 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  DSM-IV at 34.

The record indicates Plaintiff attended several counseling sessions with Thomas Lascari, MA, LPCC between February and May, 2001. (R. at 169-171). Ms. English reported problems with anxiety, particularly in the workplace, difficulties in social functioning, and performance of obsessive rituals. (Id.) The record indicates Ms. English could not work too many hours because she would become overwhelmed by stress, but Mr. Lascari also stated that Plaintiff had a number of interests and was looking into alternative career choices. (R. at 169). Plaintiff stated that medication had been of no help in managing her depression and reportedly declined to try anxiety medications because of concerns about side effects. Group therapy was suggested for the management of social phobia and agoraphobia. (Id.)

Ms. English was evaluated by James W. Schutte, Ph.D. in March, 2002 for further evaluation of her psychological complaints. (R. at 202-209). Dr. Schutte diagnosed Plaintiff with Obsessive-Compulsive Disorder and Anxiety Disorder NOS, as it was felt her anxiety attacks did not meet the full diagnostic criteria for panic disorder. Her GAF score was estimated at 50.[3] Plaintiff was noted to have significant weaknesses in verbal abilities and working memory. She also has significant deficits in math. No significant deficits were reported in adaptive behavior. Plaintiff was felt to be of low average to average intelligence. (R. at 206).

A psychological source statement was completed by Disability Determination Services in March, 2002. The reviewing psychologist found Ms. English to have mild limitations in the ability to interact socially and to travel to unfamiliar places. (R. at 208). In both cases, these limitations were felt to stem from her obsessive-compulsive disorder. (Id.) A mental residual functional

---

[3]A GAF of 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. Id.

capacity assessment revealed moderate limitations in the ability to maintain concentration, in the ability to interact with coworkers, in the ability to respond to changes in the work environment and in the ability to make plans independently of others.  (R. at 210-211).  A Psychiatric Review Technique dated September, 2002 also found obsessive-compulsive and anxiety disorder as well as low average intellectual functioning with deficient performance in math.  (R. at 217-230).

Plaintiff was evaluated by Dr. William Follett in July, 2002.  (R. at 239-241).  Although the quality of the records provided to the Court is very poor, it appears Dr. Follett reiterated the diagnoses of obsessive-compulsive disorder and anxiety disorder with a possible diagnosis of major depression.  (R. at 240).  Plaintiff's obsessive rituals were discussed as was her sensitivity to various anti-anxiety medications.  (Id.)  It appears that Ms. English had been prescribed Xanax and Zoloft at this time.  (Id.)

Plaintiff began receiving treatment at Southwest Counseling Center in early 2003.  (R. at 242-263).  Plaintiff was again diagnosed with obsessive-compulsive disorder, with a GAF score of 60.[4]  (R. at 268).  It was recommended that Plaintiff increase her Zoloft, but she declined this suggestion.  (Id.)  In July, 2003, Ms. English reported to Dr. Roerte that she felt she could handle a low stress job, although she continued to report episodes of anxiety.  (R. at 261).  Plaintiff also reported the continuation of certain obsessive rituals.  (Id.)  Dr. Roderte offered to increase Plaintiff's medications, which Plaintiff declined.  (Id.)

Ms. English underwent follow-ups at Southwest Counseling Center in August and September, 2003.  (R. at 259-60).  She stated that the Zoloft was causing some 'down feelings'.

---

[4]A GAF of 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  Id.

She continued to experience anxiety and obsessive-compulsive symptoms.  She stated that she planned to apply for a part-time job.  (R. at 260).  In September, 2003, Plaintiff indicated that her medications were effective, although she continued to experience anxiety and mood swings.  (R. at 259).  She also stated she was looking for a job and this was encouraged by her counselor. (Id.)  It was recommended that Plaintiff increase her Xanax.  (Id.)

## IV.  DISCUSSION

In her Motion to Reverse and Remand Administrative Agency Decision, Plaintiff raises the following allegations of error:

I.       The ALJ's Decision at step five was not supported by
         Substantial Evidence

II       The ALJ erred in assessing Plaintiff's credibility

Turning to Plaintiff's first allegation of error, she contends the ALJ failed to meet his burden of showing that jobs existed in the national economy which she was capable of performing.  Ms. English raises a number of arguments in this regard.

Plaintiff first contends the ALJ did not properly assess the records of her treating physicians and apparently argues that the ALJ failed to consider all the evidence.  The majority of records mentioned by Plaintiff refer to treatment occurring prior to the time she claims she became disabled in August, 2001.  Ms. English relies on the recent case of *Hamlin v. Barnhart*, 365 F.3d 1208 (10th Cir. 2004), for the proposition that the ALJ was required to consider these records, although outside the relevant time period.  Plaintiff's reliance on *Hamlin* is misplaced.  In *Hamlin*, the Court instructed the ALJ to consider medical records from earlier allegations of disability that had been previously adjudicated.  *Id.* at 1215.  *Hamlin* is distinguishable from the

present case because the records dating from before August, 2001 do not deal with a period during which Ms. English claimed to be disabled nor with a period previously adjudicated by the Social Security Administration.  The ALJ's failure to discuss the records outside the relevant period was not error.

Plaintiff also contends the ALJ erred in posing an improper hypothetical question to the vocational expert ("VE").  The question to which Plaintiff objects involved an individual with no physical limitations, who could only tolerate work of a moderate pace and of moderate stress and who was limited in interaction with the public and with coworkers.  (R. at 291-292).  Plaintiff contends this hypothetical failed to accurately reflect her functional limitations.  The ALJ based his hypothetical on the functional limitations he felt were borne out by the record at step four of the sequential evaluation.  The ALJ is only required to present to the VE those limitations which are established by the evidence.  *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995).  Because the VE included in his hypothetical the limitations he found in step four, and because Plaintiff does not allege that the ALJ erred at step four of the analysis, Plaintiff's contentions regarding an improper hypothetical should be rejected.

Finally, Ms. English contends that the ALJ erroneously failed to consider that she was limited to part-time work, which necessitated a finding of disabled.  She bases this contention largely on the fact that the VE, when questioned about an individual with a GAF of 50 who was unable to work full-time due to repeated episodes of decompensation, opined that such an individual would be unable to find work in the national economy.  (R. at 296-299).  However, as discussed, the ALJ appropriately found that there was not an adequate basis for these limitations in the record.  As such, the ALJ was within his discretion not to credit the VE's testimony about

an individual unable to work full-time. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (hypothetical questions need only reflect impairments and limitations borne out by the record).

      **b.**      **Assessment of Plaintiff's Credibility**

      Finally, Plaintiff claims the ALJ erred in finding that her description of her symptoms and limitations lacked credibility. The Tenth Circuit generally treats credibility determinations made by an ALJ as binding upon review. *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). The Court has previously stated that credibility determinations are particularly the province of the finder of fact and the Court has declined to upset such determinations when supported by substantial evidence. *Diaz v. Sec'y of Health & Human Svcs.*, 898 F.2d 774, 777 (10th Cir. 1990).

      During the hearing, Plaintiff stated she was anxious around 90 percent of the time and that this anxiety led to panic attacks about 80 percent of the time. (R. at 280). She indicated that such episodes generally occurred while she was in public and that she experienced compulsive behavior which made it difficult for her to leave the house in the morning. (R. at 282-283). She further indicated she felt she would only be capable of working part-time due to her anxiety. (R. at 278-279).

      However, Plaintiff also indicated to the ALJ a number of hobbies and activities she participated in which required her to be in public. (R. at 286-288). She also stated she noticed an improvement in her symptoms when taking her medications. (R. at 285). The ALJ also discussed the medical records which conflicted with Plaintiff's account of her limitations. (R. at 17). Specifically, he noted that her doctors had found only mild limitations in the ability to interact socially and to adapt to unfamiliar situations. (Id.) He also noted that Plaintiff's doctors had on several occasions encouraged her to look for work and that one doctor indicated she should be

able to work at least 30 hours per week. (R. at 17). By contrast, Plaintiff indicated she could only work 15 hours per week. (R. at 280).

Plaintiff objects to the ALJ's statement that, "while the claimant alleges severe restrictions on her ability to function, objective findings on mental status examination have been minimal." (R. at 17). While I would most likely not characterize the mental status findings as 'minimal', I also believe the ALJ is in the best position to evaluate the claimant's credibility. *Quallis v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (the ALJ's personal observations may play a part in his overall evaluation of the claimant's credibility). Furthermore, the ALJ outlined extensively the medical findings on which he based his credibility determination, and it does appear that Plaintiff's testimony conflicted with a number of these findings. *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988). The ALJ therefore acted within his discretion to find that Plaintiff's testimony was not entirely credible, and his determination on this point will be upheld.

## V.     CONCLUSION

Upon review of the evidence presented in this Motion to Reverse and Remand, this Court has determined that the Commissioner's decision was supported by substantial evidence and that the ALJ adequately developed the record. Accordingly, Plaintiff's Motion to Reverse and Remand is **DENIED**.

**A JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**

11